HINES, Director General of Railroads, v. KOUNTIS.

(Circuit Court of Appeals, Fourth Circuit. February 1, 1921.)

No. 1831.

Railroads ⟷400(6)—Negligent injury in yards held question for jury.

In an action for injury to plaintiff while crossing the tracks in a yard of defendant railroad company at night, with some 500 other workmen who were accustomed to cross the tracks both day and night in going to and from work, with the knowledge of defendant, where there was evidence tending to show that plaintiff was struck by a cab kicked along a crossover track without signal, control, or lights, the question of defendant's negligence *held* properly submitted to the jury.

In Error to the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Action at law by James Kountis against Walker D. Hines, Director General of Railroads, operating the Norfolk & Western Railway. Judgment for plaintiff, and defendant brings error. Affirmed.

Robert E. Scott and H. G. Buchanan, both of Richmond, Va., for plaintiff in error.

H. M. Smith, Jr., of Richmond, Va. (Smith & Gordon, of Richmond, Va., on the brief), for defendant in error.

Before KNAPP and WOODS, Circuit Judges, and BOYD, District Judge.

WOODS, Circuit Judge. The plaintiff, James Kountis, was run over by one of defendant's cars in its yard near Hopewell, Va. He recovered judgment against the defendant for the loss of a leg and other injuries. The main assigned error is the refusal of the District Judge to direct a verdict for the defendant for failure of proof of negligence. Except at the one crucial point the facts are undisputed. Plaintiff was an employee of E. I. Du Pont de Nemours & Co. at its Hopewell plant. In the contiguous yards of the Norfolk & Western Railway Company there were three tracks parallel to each other connected by crossover tracks. In going to work from the village where they lived and returning, large numbers of the employees of the Du Pont plant walked through the railroad yard every day at the change of shifts. There was no evidence of objection to this custom, though it must have been well known to the railroad officials. At about 11 o'clock on the night of January 11, 1918, about 500 of these employees, plaintiff being one of them, at the change of shift were making their way through defendant's yards. While on or near one of the tracks plaintiff was run over.

As to the precise place and manner of the accident the evidence is in sharp conflict. Plaintiff is a Greek, and his testimony, given partly in apparently broken English and partly through an interpreter, is not clear. Making the best of it we can, and taking it in connection with the testimony of two other witnesses in his behalf, his case as presented to the jury was this: Plaintiff on his way home walked through

the Du Pont plant gate to the main line track and along that track until he got to a crossover to another track. He then turned at the crossover, and had proceeded a few paces on or near the crossover track, when a cab, kicked from the main line onto the crossover without light or guard or control, struck him from the rear. The plaintiff testified that he looked back for cars at least twice as he proceeded.

The testimony of defendant's witnesses in charge of the engine, tender, and cab was to the effect that they kicked the cab down the main line and then backed the engine and tender on the crossover in order to get another car on the next track; that they did not see the plaintiff or know that he was struck. If their testimony is true, the plaintiff must have been struck, not by the kicked cab, but by a tender in front of an engine in charge of a full crew, making an ordinary train movement without knowledge of the plaintiff's danger or his presence. It is difficult to understand, however, their alleged failure to see the plaintiff, when there was abundant light for him to have been observed.

In view of the issue of fact thus made as to whether the plaintiff was injured in an ordinary yard movement of cars or by a cab kicked on him without guard or control or lights, the District Judge gave to the jury this general proposition of law applicable to defendant's view of the facts:

"The court instructs the jury that, in undertaking to pass through and along the yards of the railroad at the time and place indicated in the evidence, the plaintiff assumed all the risks of the danger incident to the place; that it was his duty to look and listen for approaching cars and engines before stepping on or attempting to cross any track; that it was also his duty to continue to listen and constantly look in both directions for approaching engines and cars so long as he remained on any track; that the employees and agents of the Director General in charge of the movement of the engine and cab referred to in the evidence were at the time and place mentioned under no duty of prevision as far as the plaintiff was concerned; that is, they were not bound to make any previous provision to protect him from injury; that they were not bound to ring any bell, or to provide any lookout, either on front of the cab or the rear of the tender, or to operate the engine and tender in any particular manner or at any particular rate of speed. All that they were required to do was to use ordinary care to avoid injuring the plaintiff after the person or persons in charge of the movements of the engine or cab saw or by the exercise of ordinary care should have seen the plaintiff in a position of danger from which he could not extricate himself."

If any criticism could be made of this instruction, it was too favorable to the defendant, in view of the conceded fact that large numbers of persons were walking through defendant's yards with its knowledge and implied consent.

Responding to the aspect of the case presented by the testimony on plaintiff's behalf, the District Judge gave this instruction:

"The court instructs the jury that if they believe from the evidence that the defendant's tracks and right of way at the place in question, for a long time prior to the accident, had been openly, continuously, and habitually used as a passway by large numbers of persons, both by day and night, and that the defendant knew, or in the exercise of reasonable care could have known, of such use of its tracks, and that the servants of the defendant 'kicked' or 'shunted' a car without lookout, light, or signal along said tracks and right of way on the night in question, where and when they might have reasonably expected people to be passing, and that they hereby failed to exercise the de-

gree of care ordinarily and reasonably to be required of them under the circumstances, and that by reason thereof, the plaintiff, without any lack of ordinary care on his part, was struck and injured by said car, then the jury should find for the plaintiff."

The correctness of this last instruction is too well established for citation of authorities. Many of them are collated in L. R. A. 1916C, 1033, and in 10 Ann. Cas. 15.

Evidently a directed verdict would have been improper, in view of the rule of law stated in the charge, and the sharp issue of fact as to whether plaintiff was struck by a kicked car, without light, guard, or control, at a place where the defendant had reason to expect many persons moving about in its yards, or by the tender of an engine moving under the observation and control of a full crew.

Affirmed.